UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

HIDIR ILYAS YAMAN,

Petitioner,

v.

TODD M. LYONS, et al.,

Respondents.

No.  1:26-cv-00556-DC-SCR

FINDINGS & RECOMMENDATIONS

Petitioner is a federal immigration detainee proceeding through counsel in this habeas corpus action filed pursuant to 28 U.S.C. § 2241.  This action was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I.      Factual and Procedural History**

Petitioner is a citizen of Turkey who fled persecution in his home country based on his Christian religion.[1]  ECF No. 1 at 6-7.  He presented himself to U.S. Customs and Border Protection ("CBP") near the Southern border on or about April 11, 2023.  ECF No. 1 at 3.  He was served with a Notice to Appear ("NTA") on April 13, 2023 charging him with being inadmissible under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act for entering the United States without inspection.[2]  ECF No. 1-1 at 4.  He was released on his own

---

[1] Since arriving in the U.S., petitioner has converted to become a Jehovah's Witness.

[2]  According to petitioner's counsel, "DHS never filed the NTA issued to Petitioner with any immigration court.  Accordingly, Petitioner was never placed into removal proceedings under this NTA."  ECF No. 1 at 7.

1

recognizance on April 13, 2023 pursuant to Immigration and Nationality Act Section 236.[3]  See ECF No. 1-1 at 2 (Department of Homeland Security's Order of Release on Recognizance); ECF No. 9-1 (same).  He subsequently applied for asylum, obtained work authorization, and complied with all requirements imposed by immigration officials for two and a half years.  Id.

However, on October 1, 2025, during a check-in at the San Francisco DHS Office, petitioner was arrested.  Id. at 4.  He "has been detained in ICE custody continuously since October 01, 2025 without ever receiving a bond hearing or individualized custody determination."  ECF No. 1 at 2.  He is detained at the Mesa Verde Detention Center located in this judicial district.  Id. at 5.

Petitioner's asylum application was dismissed by U.S. Citizenship and Immigration Services ("USCIS") on October 15, 2025.  Id. at 4.  He was then issued a new NTA and placed into removal proceedings based on entering the country without being "admitted or paroled."  ECF No. 1 at 8.[4]  This NTA did not charge petitioner with being an arriving noncitizen, which is a separate box on the NTA that was not checked.  Id.

An Immigration Judge ("IJ") determined that there was no jurisdiction to grant petitioner a bond hearing on December 3, 2025.  ECF No. 1 at 8.  Therefore, his "[b]ond request [was] withdrawn without prejudice."  ECF No. 1-1 at 12 (Order of the Immigration Judge).  Petitioner's next scheduled immigration court hearing is February 18, 2026.  ECF No. 1 at 8.

In his first claim for relief, petitioner asserts that his ongoing detention violates the Fifth Amendment Due Process Clause because it is not reasonably related to a valid governmental purpose and because there has not been any individualized determination that his detention is necessary to protect the community or to mitigate any risk of flight.  ECF No. 1 at 10-12.  Next, petitioner asserts that his First Amendment right to freely exercise his religion and his Fifth Amendment right to family unity is being violated while in custody because he has no access to meaningfully practice his religion and is denied access to his family members while in detention.  ECF No. 1 at 13-14-15.  In his third claim, petitioner contends that his detention violates the

---

[3]  This is codified at 8 U.S.C. § 1226.
[4]  This NTA is not a part of the record in this case.

2

Immigration and Nationality Act ("INA") because agency practice has allowed all noncitizens "who are present without having been admitted or paroled" to "be eligible for bond and bond redetermination." Id. at 15 (citing 62 Fed. Reg. at 10323). Finally, petitioner submits that his detention violates the Administrative Procedure Act because petitioner's "revocation of release from custody has been made or will be categorically directed by government officials not authorized by law to make this determination." Id. at 17. By way of relief, petitioner requests his immediate release from immigration detention without bond, or, in the alternative, subject to reasonable conditions of supervision…." Id. at 19.

On January 29, 2026, respondents filed a return to the § 2241 petition. ECF No. 8. Some of respondents' factual assertions appear to pertain to some other lawsuit.[5] The return also refers to "information gleaned from government databases" without identifying which databases or providing any copies of such information. ECF No. 8 at 2. As to the law, respondents assert that petitioner is detained pursuant to 8 U.S.C. § 1225(b)(1) while acknowledging that § 1226(a) "'conceivably applies to all [noncitizens]' in removal proceedings. ECF No. 8 at 3. According to respondents, "the distinction between §§ 1225 and 1226 is not the location where a noncitizen is found or the duration of their presence in the United States. Rather, applying § 1225 instead of § 1226 turns on whether the noncitizen was admitted to the United States at the time of entry." ECF No. 8 at 5. Regarding substantive due process, respondents contend that there has been no violation because "there is no evidence suggesting that Petitioner's detention pending the completion of removal proceedings is "'indefinite' and 'potentially permanent.'" Id. at 6. With respect to the procedural due process claim, respondents assert that even if the Mathews v. Eldridge, 424 U.S. 319 (1976), standard applies, petitioner has not demonstrated that he is entitled to a bond hearing. Id. at 7-8. Respondents do not address the remaining claims in petitioner's § 2241 application. If any relief is to be granted, respondents request that it be limited to a bond

---

[5] Citing to "Docket No. 2-2, p. 2," respondents assert that "[p]etitioner was detained and then paroled pursuant to 8 USC § 1182(d)(2)(5)(A) for one year beginning August 12, 2021." ECF No. 8 at 2. However, there is no ECF No. 2-2 in this case, and ECF No. 2 was issued by the Clerk of Court after the § 2241 petition was filed. ECF No. 2 (Prisoner New Case Documents and Order Re Consent Issued).

hearing.

In his traverse, petitioner points out the factual errors in the return.  ECF No. 9 at 1-2. Petitioner emphasizes that "[i]n releasing Petitioner on his own recognizance, the government necessarily determined that he was not a flight risk or danger."  ECF No. 9 at 2 (citing 8 C.F.R. § 1236.1(c)(8)).  Notably, respondents do not argue that petitioner failed to comply with any conditions of his release or provide any evidence suggesting that he is a danger to the public or a flight risk.  Id. at 3.  Finally, petitioner submits that his ongoing detention without an individualized bond hearing violates due process under the balancing test of Mathews v. Eldridge. Id.

**II.     Legal Standards**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."  Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).  The federal habeas statute confers subject matter jurisdiction over challenges to any individual's confinement "in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).

**A.     Constitutional Framework**

The Due Process Clause protects persons in the United States from being deprived of life, liberty, or property without due process of law.  U.S. Const. amend. V.  The Supreme Court has concluded that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent."  Zadvydas v. Davis, 533 U.S. 678, 693 (2001).  This provision "protects individuals against two types of government action:  violations of substantive due process and procedural due process."  United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).  Freedom from imprisonment or physical restraint is a "fundamental" right at the "core of the liberty protected by the Due Process Clause."  Hernandez v. Sessions, 872 F.3d 976, 993

4

(9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).  As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest."  Reno v. Flores, 507 U.S. 292, 302 (1993).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause.  The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies.  See Rodriguez Diaz, 53 F.4th at 1206-07.  Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include.  Mathews, 424 U.S. at 335.

### B.    Statutory Immigration Framework

The statutory and regulatory framework governing immigration detention can charitably be described as complex.  "Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).  Petitioner asserts that he is subject to the discretionary provisions of 8 U.S.C. § 1226(a) based on his Order of Release on Recognizance ("OREC") that was issued by DHS on April 13, 2023.  This statute was accurately summarized in Labrador-Prado v. Noem, No. 1:25-cv-1598 DC SCR (HC), 2025 WL 3458802 at *3 (E.D. Cal. Dec. 2, 2025):

> Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release him on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is

apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under section 1226(a), she [or he] is entitled to a bond hearing. Jennings v. Rodriguez, 583 U.S. 281, 306 (2018).

As to noncitizens seeking admission into the United States, section 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; see also Ortiz Donis, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing Jennings, 583 U.S. at 303.)

[….]

Until this year, the United States Department of Homeland Security ("DHS") has "applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." Salcedo Aceros v. Kaiser, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). According to Petitioner, on July 8, 2025, DHS issued a memo to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that section 1225 "is the applicable immigration detention authority for all applicants for admission." (Doc. No. 1 at ¶ 37.) Following this development, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). Garcia v. Noem, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); Salcedo Aceros, 2025 WL 2637503, at *4.

### III.    Analysis

The undersigned finds based on the undisputed Order of Release on Recognizance, which was made under 8 U.S.C. § 1226(a), that the statutory authority governing petitioner's redetention is that same statute. See Selis-Tinoco v. Noem, No. 25-cv-01762 DC JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025) (finding that redetention fell under 8 U.S.C. § 1226(a) for non-citizen initially arrested near the border without valid entry documents who had previously been released under that same statute); Labrador-Prato v. Noem, No. 25-cv-01598 DC SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025) (same). At the time that petitioner was redetained in October 2025, he had been residing in the U.S. for two and a half years. "He was not apprehended upon arrival or at the border; rather, he was arrested while appearing for a routine ICE check-in…—'an act of

compliance, not an attempt to gain admission.'" Faizyan v. Casey, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *6 (S.D. Cal. Nov. 17, 2025) (citation omitted); see also Banos v. Chestnut, No. 1:25-cv-1634-DC-CSK-P, 2026 WL 102699, at *4 (E.D. Cal. Jan. 14, 2026) (joining the majority of courts nationwide "in rejecting respondent's interpretation of Sections 1225 and 1226 and the BIA's interpretation of these statutes in Yajure Hurtado.").[6]

Having determined that petitioner's ongoing detention is discretionary as a matter of statutory construction, the court must determine whether his redetention by immigration officials in October 2025 violated the Fifth Amendment. The Supreme Court has found that a protected liberty interest may arise from a conditional release from physical restraint. Young v. Harper, 520 U.S. 143, 147-49 (1997). Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. See id. (finding due process requires pre-deprivation hearing before revocation of preparole); Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (same, in probation context); Morrissey v. Brewer, 408 U.S. 471, 482 (1972) (same, in parole context). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).

In Morrissey, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations

---

[6] Like petitioner in the instant case and the petitioners in Selis-Tinoco v. Noem and Labrador-Prato v. Noem, the petitioners in Faizyan and Banos were initially released under 8 U.S.C. § 1226(a) after being apprehended at or near the border.

7

omitted).  Therefore, the Supreme Court concluded that a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

In this case, petitioner's release in April 2023 on his own recognizance is similar because it allowed petitioner to live in the community subject to immigration supervision for over two and a half years.  During this time petitioner formed "enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  For these reasons, the undersigned finds that petitioner's original release gave rise to a constitutionally protected liberty interest.  See F.M.V. v. Wofford, No. 1:25-cv-01381-KES-SAB (HC), 2025 WL 3083934, at *4 (E.D. Cal. Nov. 4, 2025) (granting motion for a preliminary injunction); Guillermo M. R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is inherent in the Due Process Clause") (emphasis in original).

Having found that petitioner has a protected liberty interest, the only question remaining is what procedures are necessary to protect that liberty interest.  Under the procedural due process test announced in Mathews v. Eldridge, 424 U.S. 319 (1976), this court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

The first factor unquestionably tilts in petitioner's favor because he has a clear interest in remaining free from detention.  "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.  Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  Petitioner was at liberty for two and a half years before being redetained in this case.  During that time period, he complied with all terms of his immigration supervision and established religious ties leading to his conversion to a Jehovah's Witness.  The duration of his conditional release underscores his interest in liberty.  See Pinchi v. Noem, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025) (in the past five years, petitioner developed "extensive relations of support and

8

interdependence" that "underscore the high stakes of [his] liberty."); Ortega v. Bonnar, 415 F. Supp. 3d 963 (N.D. Cal. 2019) (holding that petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community). Therefore, this factor favors a finding that petitioner's private interest has been affected by his re-detention.

Second, the risk of erroneous deprivation also weights in petitioner's favor. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO (HC); 2025 WL 2617255, at *4 (E.D. Cal. Sept. 9, 2025); A.E. v. Andrews, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (stating that "[t]he risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Petitioner has been redetained without any individual determination that such detention is necessary based on any risk of danger to the community or flight risk. There is no evidence in the record that he violated any term of his release or that he has any criminal record. Under these circumstances, a predeprivation hearing before a neutral decisionmaker would have significant value in determining whether petitioner's detention is necessary. Thus, the second Mathews factor favors petitioner.

Finally, the government's interest is low, and the effort and cost required to provide petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, as in this case, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." Hernandez, 872 F.3d at 994; see also R.D.T.M., 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up). For all these reasons, the undersigned finds that petitioner is entitled to relief under the Mathews factors.

9

Based on this analysis, petitioner was entitled to a hearing before he was redetained. "An essential principle of due process is that a deprivation of life, liberty, or property be *preceded* by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted) (emphasis added); see also Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents point to no reasons a pre-deprivation hearing could not be held, thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d at 1036 (N. D. Cal. July 17, 2025). Accordingly, petitioner's § 2241 application should be granted based on the procedural due process claim.

In the interests of judicial economy and based on the recommended relief in this case, the undersigned finds it unnecessary to address the remaining claims raised in the § 2241 petition.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's application for a writ of habeas corpus (ECF No. 1) be granted with respect to his due process claim.

2. Petitioner be ordered to be released immediately from the respondents' custody with the same conditions that he was subject to prior to his redetention on October 1, 2025.

3. At the time of release, respondents be required to return all of petitioner's documents and possessions.

4. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

5. Respondents be further directed to file a notice certifying compliance with the above provisions within three days from the date of any adoption of these Findings and Recommendations by the District Judge assigned to this matter.

6. The Clerk of Court be directed to enter judgment in favor of petitioner and to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 5, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

11